**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| | : | |
| VINCENT FERRARA | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:17-CV-0360 (JCH) |
| | : | |
| v. | : | |
| | : | |
| JOSEPH MATURO, JR., ET AL. | : | SEPTEMBER 25, 2016 |
| Defendants. | : | |

**RULING RE: MOTION TO DISMISS (DOC. NO. 19) AND**
**MOTION TO AMEND (DOC. NO. 24)**

## I.    INTRODUCTION

The plaintiff, Vincent Ferrara, filed a Complaint on March 1, 2017. Complaint

("Compl.") (Doc. No. 1).  In it, Ferrara brings five claims against the defendants Mayor

Joseph Maturo, Chiefs of Police Edward Lennon and Brent Larrabee, Deputy Chief of

Police James Naccarato, Police Sergeants Craig Michalowski and Kevin Klarmon,

Police Officer Robert Brockett, the Town of East Haven ("the Town"), and the East

Haven Board of Police Commissioners ("EHBPC").  Ferrara alleges that the defendants

retaliated against him for cooperating with the Department of Justice ("DOJ") in its

investigation of the East Haven Police Department ("EHPD").  See Proposed Amended

Complaint ("Am. Compl.") (Doc. No. 24-1).

The defendants filed a Motion to Dismiss Counts One, Two, Three, and Five of

the Complaint on May 8, 2017.  Motion to Dismiss ("Mot. to Dismiss") (Doc. No. 19).

Ferrara also filed a Motion to Amend the Complaint on July 20, 2017, to add a sixth

cause of action under Conn. Gen. Stat. § 31-51q.  Motion to Amend Complaint ("Mot. to

Amend") (Doc. No. 24).

For the reasons set forth below, the court grants Ferrara's Motion to Amend. The court also grants the defendants' Motion to Dismiss as to Count Five and denies the Motion as to Counts One, Two, and Three.

## II. FERRARA'S MOTION TO AMEND

Federal Rule of Civil Procedure 15(a)(2) provides that a party that is no longer entitled to amend as a matter of course "may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). In those cases, the court "should freely give leave when justice so requires." Id. Ferrara's Proposed Amended Complaint seeks to add Count Six, alleging that the defendants violated Conn. Gen. Stat. § 31-51q by disciplining Ferrara for exercising his First Amendment rights. See Mot. to Amend. The Proposed Amended Complaint makes no changes to the alleged facts or the other five Counts from the original Complaint and therefore does not alter in any way the court's analysis of the defendants' Motion to Dismiss. See id. The defendants have the opportunity to respond to the additional count and are not prejudiced by the amendment. Nor have they opposed the Motion. Thus, the court finds that justice would be served by permitting Ferrara to amend the Complaint, and the Motion is granted.

Noting that the Proposed Amended Complaint is substantively identical to the original Complaint in all areas relevant to the defendants' Motion to Dismiss, the court now treats the Proposed Amended Complaint as the operative complaint. See McKnight v. Mental Health Ass'n of Conn., No. 3:13-CV-1436 (SRU), 2015 WL 5116766, at *1 (D. Conn. Aug. 28, 2015).

## III.  FACTS

The Amended Complaint alleges the following facts.[1]  Ferrara was employed as a police officer for the Town of East Haven beginning in 2007.  Am. Compl. at ¶ 21.  In 2009, the DOJ Civil Rights Division investigated the EHPD for police misconduct, violations of constitutional rights, and discrimination.  See id. at ¶ 22.  Among other findings, the DOJ found that "Chief Gallo and other EHPD officers created a hostile and intimidating environment for persons who wished to cooperate with [their] investigation at EHPD."  Id. 26.  In 2012, the investigation resulted in a Settlement Agreement and Compliance Order that required the EHBPC to establish a policy that "expressly prohibit[s] all forms of retaliation, whether subtle or direct, including discouragement, intimidation, coercion, or adverse action, against any person, civilian or officer, who reports misconduct, makes a misconduct complaint or cooperates with an investigation of misconduct."  Id. at ¶ 65; see also id. at ¶ 66.

In 2010, the DOJ Criminal Division also investigated the EHPD for similar violations.  Id. at ¶ 31.  Ferrara cooperated with the DOJ and the FBI in the investigation by providing information about discriminatory and illegal actions of EHPD officers and by testifying against them before a grand jury.  See id. at ¶¶ 32–37.  The Amended Complaint alleges that this speech is protected by the First Amendment.  See id. at ¶¶ 76–77.  Several EHPD officers were subsequently indicted for criminal violations,

---

[1] The court accepts all factual allegations in the Amended Complaint as true for the purposes of a motion to dismiss.  Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009). When a proposed amended complaint is filed in response to a motion to dismiss, as is the case here, the facts alleged in the proposed amended complaint are assumed to be true for purposes of the motion to dismiss.  See Claes v. Boyce Thompson Inst. for Plant Research, 88 F.Supp.3d 121, 123 (N.D.N.Y. 2015).

including among other things, "instances of harassment and intimidation of fellow officers believed to be cooperating with the DOJ/FBI." Id. at ¶¶ 52–53.

The Amended Complaint alleges that other EHPD officers, including the defendants, learned of Ferrara's cooperation and harassed him in retaliation. See id. at ¶ 38, 54. Examples of such harassment against Ferrara include making threats and intimidating comments at police union meetings, hanging an offensive poster outside his locker, ordering new officers not to associate with him, refusing to back him up on calls, threatening him with a gun, and filing false complaints against him. See, e.g., id. at ¶¶ 39–51, 60–64, 69. For instance, in 2016, defendant Sergeant Michalowski filed a false complaint of unreasonable force against Ferrara. Id. at ¶ 60. Additionally, in March of that year, defendant Chief of Police Larrabee suspended Ferrara for ten days without cause on a false finding that he violated the disciplinary matrix. Id. at ¶ 63. When Ferrara appealed the suspension to the EHBPC, the EHBPC initially indicated that it would overturn the suspension but, after holding an executive session and postponing the meeting, the EHBPC instead upheld it. Id. at ¶ 64. Ferrara also alleges that he filed grievances and complaints about the harassment and retaliation to Mayor Maturo, Chiefs of Police Larrabee and Lennon, and the EHBPC, but none of the defendants acted on his complaints. See id. at ¶¶ 46, 70–71.

The Amended Complaint contains six counts against the defendants based on these facts. Pursuant to section 1983, Count One alleges that the defendants violated Ferrara's First Amendment rights by retaliating against him because of his protected speech in cooperation with the DOJ and FBI. See id. at ¶¶ 76–83. Count Two alleges that the defendants violated Ferrara's Fourteenth Amendment rights by failing to provide

adequate procedures before disciplining him and instead using the disciplinary process to harass him.  See id. at ¶¶ 85–92.  Count Three alleges that the Town of East Haven is liable for the aforementioned violations under Monell v. Department of Social Services, 436 U.S. 658 (1978).  See id. at ¶¶ 93–100.  Count Four alleges that the defendants, by their harassment and retaliation, intentionally inflicted emotional distress on Ferrara.  See id. ¶¶ 101–05.  Count Five alleges that the Town is liable for damages caused by the negligence of its officers under Conn. Gen. Stat. § 52-557n.  See id. at ¶¶ 107–08.  Finally, Count Six, which was added in the Amended Complaint, alleges that the defendants violated Conn. Gen. Stat. § 31-51q by disciplining Ferrara for exercising his First Amendment rights.  See id. at ¶¶ 110–11.  The defendants now move to dismiss Counts One, Two, Three, and Five of the above.

## IV.    LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires a complaint to plead "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. Proc. 8(a).  Under Rule 12(b)(6), to survive a motion to dismiss for failure to state a claim, that plain statement must allege facts sufficient to state a plausible claim for relief.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  While this plausibility standard does not require probability, it is not satisfied by "a sheer possibility that a defendant has acted unlawfully" or by facts that are "merely consistent with a defendant's liability."  Id. (internal quotation marks omitted).

In deciding a motion to dismiss under Rule 12(b)(6), the court must accept all material factual allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff. Hemi Grp., LLC v. City of New York, 559 U.S. 1, 5 (2010); Jaghory v. N.Y. State Dep't Educ., 131 F.3d 326, 329 (2d Cir. 1997). However, the court is not required to accept as true a "legal conclusion couched as a factual allegation." Timm v. Faucher, No. 3:16-CV-00531 (VAB), 2017 WL 1230846, at *6 (D. Conn. Mar. 31, 2017) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)). In those instances, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. The court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which judicial notice should be taken." Borg v. Town of Westport, No. 3:15-CV-1380 (AWT), 2016, WL 9001021, at *3 (D. Conn. Aug. 18, 2016) (quoting Samuels v. Air Trans. Local 504, 992 F.2d 12, 15 (2d Cir. 1993)).

## V.    DISCUSSION

The defendants move to dismiss Counts One, Two, Three, and Five.[2]  They argue that Counts One and Two fail to state a claim first, because the allegations of conspiracy are conclusory, vague, and general, and second, because a conspiracy cannot exist between members of the same corporation.[3]  See Defendant's

---

[2] The original Complaint, on which the defendants relied in filing their Motion to Dismiss, did not contain Count Six, which was added in the Amended Complaint after the Motion to Dismiss was filed. See Mot. to Amend at 1.

[3] A police department has been treated as a corporation for the purposes of the intracorporate conspiracy doctrine.  See Natale v. Town of Darien, No. CIV. 3:97CV583 (AHN), 1998 WL 91073, at *5 (D. Conn. Feb. 26, 1998).

Memorandum in Support of Motion to Dismiss ("Mem. in Supp.") at 4–12. The defendants argue that Count Three fails to state a claim against the Town of East Haven because Ferrara has not pled facts indicating that his alleged injuries were caused by a policy of the Town. See id. at 12–18. Finally, they argue that Count Five fails to state a claim of negligence against the Town because the Amended Complaint has pled only facts showing that the defendants acted intentionally, not negligently. See id. at 18–20.

A.    First and Fourteenth Amendment Claims (Counts One and Two)

Counts One and Two of the Amended Complaint assert claims under section 1983 of title 42 of the United States Code ("section 1983"), alleging that the defendants violated Ferrara's rights under the First and Fourteenth Amendments. See Am. Compl. at ¶¶ 76–83, 85–92. The defendants argue that the court should dismiss Counts One and Two because Ferrara failed to plead facts alleging that the defendants engaged in a conspiracy. See Mem. in Supp. at 4–12. The court agrees that, to the extent Ferrara sought to plead conspiracy under section 1983, he failed to do so, and Counts One and Two should be dismissed. However, the court reads the Amended Complaint as also alleging that the defendants each violated Ferrara's rights individually and finds that Ferrara has stated a sufficient claim for relief on that basis.

1.    Against Each Defendant Directly and Individually

A section 1983 claim has two essential elements: "(1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled in part on other grounds by Daniels v. Williams, 474 U.S. 327, 330–31

7

(1986).  While a claim of conspiracy can be brought under section 1983, a conspiracy is not required for a section 1983 action, as an individual defendant can—and often does—violate a plaintiff's constitutional rights without first agreeing with others to do so.

In this case, although the Amended Complaint does contain allegations pertaining to conspiracy, it also makes claims against each defendant that do not rely on their acting in concert.  Ferrara is permitted to raise both kinds of claims in the same complaint and has sufficiently stated a claim for relief against each defendant directly and individually.  For example, the Amended Complaint alleges, among other things, that Officer Brockett told other officers that Ferrara was a rat and refused to back him up on calls; that Sergeants Michalowski and Klarmon ordered new officers not to associate with him; that Sergeant Michalowski initiated a false complaint of unreasonable force against him in 2016; that Chief of Police Larrabee wrongly suspended him in March of 2016; and that the EHBPC improperly upheld the suspension.  See Am. Compl. at ¶¶ 42–46, 60–64.

The defendants have raised no challenge to Counts One and Two for failure to state a claim against each defendant directly.  Their arguments pertain only to the extent these two counts seek to allege a theory of conspiracy.  For example, while the defendants argue that the allegations of conspiracy are conclusory, vague, and general, they do not raise the same argument as to the allegations of direct retaliation or harassment.  See Mem. in Supp. at 9–11.  Therefore, to the extent that Counts One and Two do not rely on conspiracy and instead allege that each defendant individually violated Ferrara's First and Fourteenth Amendment rights, the Motion to Dismiss is denied.

2. Under a Theory of Conspiracy

To the extent that Ferrara does proceed under a conspiracy theory, the defendants argue that the court should dismiss Counts One and Two for two reasons. First, the defendants argue that Ferrara has not alleged sufficient facts to state a plausible claim for relief because his allegations regarding conspiracy are conclusory, vague, and general. See Mem. in Supp. at 4–11. Second, the defendants argue that Ferrara failed to state a claim because a conspiracy does not exist between members of a single corporation. See Mem. in Supp. at 11–12. The court agrees with the defendants that Counts One and Two of the Amended Complaint fail to allege sufficient facts to state a claim of conspiracy. The court dismisses Counts One and Two to the extent that they purport to do so and grants Ferrara leave to replead. Because the court dismisses on this ground, it is unnecessary to decide the defendants' other argument. However, should Ferrara sufficiently replead factual allegations supporting a claim for conspiracy, the court notes that the intracorporate conspiracy doctrine should not likely bar his claim.

"To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999). The agreement can be tacit—as Ferrara argues in this case—rather than overt. See Aho v. Anthony, 782 F. Supp. 2d 4, 7 (D. Conn. 2011); Plaintiff's Memorandum in Opposition to Motion to Dismiss ("Mem. in Opp.") (Doc. No. 22) at 5. However, the plaintiff must nonetheless show "some factual basis supporting a meeting of the minds, such that the defendants entered into an agreement, express or tacit, to achieve the

unlawful end." <u>Aho</u>, 783 F. Supp. 2d at 7. This can be done through circumstantial or direct evidence, as the Second Circuit has recognized that "conspiracies are by their very nature secretive operations." <u>Pangburn</u>, 200 F.3d at 72.

At the motion to dismiss stage, the plaintiff must plead "factual content that allows the court to draw the reasonable inference" that the above three elements are satisfied. <u>Ashcroft</u>, 556 U.S. at 678. For conspiracy claims, "complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." <u>Ciambriello v. County of Nassau</u>, 292 F.3d 307, 325 (2d Cir. 2002) (quoting <u>Dwares v. City of New York</u>, 985 F.2d 94, 100 (2d Cir. 1993)). In <u>Ciambriello</u>, the Second Circuit affirmed the dismissal of Ciambriello's claims as conclusory because he failed to provide "any details of time and place" or "to specify in detail the factual basis necessary to enable [defendants] intelligently to prepare their defense." <u>Id.</u>

In evaluating the sufficiency of the Amended Complaint, the court accepts all factual allegations therein as true and draws all inferences in favor of Ferrara. <u>See Hemi Grp.</u>, 559 U.S. at 5; <u>Jaghory</u>, 131 F.3d at 329. While the court acknowledges that this is a close case, the court concludes that Ferrara failed to allege a claim of conspiracy because he has not alleged facts sufficient to support an inference that there was an agreement between the defendants to do the unlawful acts.

In several sentences of the Amended Complaint, Ferrara explicitly mentions that the defendants conspired or acted in concert to deprive him of his rights. <u>See, e.g.</u>, Am. Compl. at ¶ 58 ("Naccarato and subsequently Brockett in concert with the other

individual Defendants initiated retaliatory and unjustified internal investigations against the Plaintiff."); id. at ¶ 74 ("Defendants knew that their conduct was abusive, and conspired to create a hostile work environment . . . ."); id. at ¶ 91 ("Defendants have orchestrated a joint effort to force Plaintiff from his government employment . . . ."); see also id. at ¶¶ 55, 78, 88, 90.  However, these statements are conclusory, only stating that the defendants have conspired without providing any facts to support a plausible inference that they have done so.  Merely stating that the defendants conspired or acted in concert, without more, does not state a claim of conspiracy.  See, e.g., Robbins v. Cloutier, 121 Fed. App'x 423, 425 (affirming the dismissal of a complaint where plaintiffs only alleged that an agreement took place without alleging facts to support that inference).  In particular, Ferrara has failed to allege facts indicating either an agreement between the defendants or specific instances of misconduct in which the defendants acted together.

In a few places, Ferrara comes close to stating facts from which the court could infer an agreement between the defendants.  For example, in Paragraph 64, Ferrara states:

> Plaintiff appealed the suspension to the EHBPC who initially stated they would overturn the suspension, and exonerate Plaintiff, then after an illegal "executive session" and then a postponement of the meeting initiated by Chief Lennon and Town Attorney Zullo the EHBPC improperly upheld the suspension.

Am. Compl. at ¶ 64.  However, this statement alone is insufficient because the Amended Complaint does not state who was present at the executive session or what was discussed.  Asserting that the executive session was illegal and the ultimate decision improper does not indicate that those present at the session reached any kind

11

of agreement, let alone one to engage in unlawful retaliation. Similarly, Ferrara alleges that Sergeants Michalowski and Klarmon told newly appointed officers not to associate with Ferrara. See, e.g., Am. Compl. at ¶ 42. Had Ferrara pled that the new officers then agreed, either expressly or tacitly by in fact not associating with him, he may have presented sufficient facts for the court to infer an agreement between Michalowski, Klarmon, and the new officers. However, the Amended Complaint, as filed, falls short of alleging the facts necessary to draw this inference.

Additionally, where Ferrara does plead specific instances of misconduct, he alleges actions by individual defendants without indicating that the defendants acted together or in support of each other. For instance, as evidence that the defendants used unjustified disciplinary investigations to harass Ferrara, the Amended Complaint alleges that in 2016, Sergeant Michalowski initiated a false complaint of unreasonable force against him; that on March 29, 2016, Chief of Police Larrabee falsely suspended him for ten days; and that Chief of Police Lennon initiated dubious internal investigations against him. Id. at ¶ 60, 63, 69. None of these instances indicate that the defendants acted in concert. Even where the Amended Complaint mentions multiple actors, it merely asserts that both defendants engaged in the same types of actions, but does not state that they did so in concert. See id. at ¶ 61 ("On numerous occasions, Michalowski and Klarmon have engaged in harassing and threatening behavior against Plaintiff, singled him out for discipline, and told other officers not to communicate or associate with Plaintiff."). While these facts are specific and may demonstrate an unconstitutional injury, they do not support an inference of an agreement between the defendants, as is required for a claim of conspiracy.

Finally, the Amended Complaint does allege that some defendants in their supervisory roles failed to protect Ferrara from the retaliation of other defendants and took no action on his complaints. For example, Ferrara alleges that he complained about Officer Brockett's harassment to Chief of Police Larrabee, who "rebuffed it and refused to take action." Id. at ¶ 46; see also id. at ¶ 64 (alleging that the EHBPC upheld Larrabee's improper suspension); id. at ¶ 43, 59 (alleging that Sergeant Klarmon and Deputy Chief of Police Naccarato were promoted despite their harassment of Ferrara). However, Ferrara has not pled specific facts indicating that the failure to protect him from his harassers was motivated by a conspiratorial objective or the product of an agreement to retaliate. Without more, the defendants' failure to take supervisory action is not sufficient to support an inference of an agreement to deprive Ferrara of his rights.

In sum, the Motion to Dismiss as to Counts One and Two is granted in part to the extent that they claim to proceed under a theory of conspiracy. However, the court recognizes the challenge that plaintiffs face in alleging a conspiracy because "conspiracies are by their very nature secretive operations." Pangburn, 200 F.3d at 72 (quoting Rounseville v. Zahl, 13 F.3d 625, 632 (2d Cir. 1994)). Therefore, Ferrara is given leave to replead the Counts under a conspiracy theory if he can plead additional facts to show an agreement between the defendants.[4] The Motion to Dismiss as to Counts One and Two is denied in part to the extent that it seeks to dismiss causes of action against individual defendants.

---

[4] The court need not decide the intracorporate conspiracy doctrine issue at this time because the conspiracy claims under Counts One and Two have been dismissed on other grounds. However, should Ferrara sufficiently replead, the court notes that the intracorporate conspiracy doctrine is not likely to bar his claim.

B.    Municipal Liability Under Monell (Count Three)

Count Three of the Amended Complaint alleges that the Town of East Haven is liable for the aforementioned deprivation of Ferrara's First and Fourteenth Amendment rights.  See Am. Compl. at ¶ 101–05.  The defendants argue that Count Three should be dismissed because Ferrara failed to state a claim for municipal liability under Monell v. Department of Social Services, 436 U.S. 658 (1978).  The defendants argue that Ferrara has not pled sufficient facts to give rise to an inference that any constitutional injury was caused by an official policy of the Town.  See Mem. in Supp. at 12–18.  The court disagrees and finds that the Amended Complaint has stated a claim for municipal liability by alleging a custom or practice of retaliation that represented the official policy of the Town.

Under section 1983, a municipality cannot be held liable under a theory of respondeat superior, but can be sued if "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."  Monell, 436 U.S. at 690–91.  To bring a successful claim against a municipality, then, a plaintiff must prove: "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3)

_____

The doctrine states that "there is no conspiracy if the conspiratorial conduct challenged is essentially a single act by a single corporation acting exclusively through its own directors, officers, and employers, each acting within the scope of his employment."  Herrmann v. Moore, 576 F.2d 453, 459 (2d Cir. 1978).  However, the doctrine only applies to "defendants who are acting within the scope of their employment when conducting the alleged conspiracy.  'An exception to the intracorporate conspiracy doctrine applies to individuals within a single entity where they are pursuing personal interests wholly separate and apart from the entity.'"  Moulthrop v. Slavin, No. 3:16-CV-00220 (VAB), 2017 WL 421647, at *7 (D. Conn. Jan. 31, 2017) (quoting Cowan v. City of Mount Vernon, 95 F. Supp. 3d 624, 650 (S.D.N.Y. 2015)).  In this case, retaliation and harassment, including refusing to back up Ferrara on calls and filing false complaints against him, are not likely to be authorized by or in the interest of the police department.  Rather, they undermine the safety of the department's officers and the integrity of its disciplinary processes.  Thus, the defendants' actions are likely to be outside the scope of their employment, and the personal interest exception would permit the court to find that they were capable of conspiracy.

causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." Roe v. City of Waterbury, 542 F.3d 31, 36 (2d Cir. 2008). At issue in this case, the fifth element can be satisfied by showing "(1) the existence of an official policy, (2) that an official with final policy-making authority took action or made a specific decision that caused the deprivation, or (3) the deprivation was caused by an unlawful practice amongst subordinate officials that was so widespread as to imply constructive acquiescence by policy-making officials." Rogers v. City of New Britain, 189 F. Supp. 3d 345, 358 (D. Conn. 2016). In effect, the plaintiff must show that, "through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown, 520 U.S. 397, 404 (1997).

In this case, the Amended Complaint contains language that appeals to both the theory that some of the defendants are policymakers whose decisions represent municipal policy and the theory that the misconduct is so widespread as to constitute a custom or practice of the municipality. See, e.g., Am. Compl. at ¶ 94 ("Maturo, Larrabee, Lennon, and the Board of Police Commissioners as policy makers, and their subordinates continued the retaliation against Plaintiff in furtherance of the practice, custom and procedure of the Town of East Haven."). The court concludes that Ferrara has alleged sufficient facts to state a claim of municipal liability through a widespread custom or practice. Therefore, the court need not address whether the defendants are final policymakers or not.

Under a theory of municipal policy through custom or practice, Ferrara alleges that the retaliation was so widespread as to establish a custom because the Town was deliberately indifferent to the constitutional violations of its police department. See

Mem. in Opp. at 10–11. A custom can be established if the plaintiff shows that a practice "was so persistent or widespread as to constitute a custom or usage with the force of law, or that a discriminatory practice of subordinate employees was so manifest as to imply the constructive acquiescence of senior policy-making officials." Patterson v. Cty. of Oneida, N.Y., 375 F.3d 206, 226 (2d Cir. 2004). The plaintiff must show "that the official's inaction constitutes a deliberate choice." Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 126 (2d Cir. 2004). To do so, the plaintiff may offer circumstantial proof, but "the mere assertion that a municipality has such a policy is generally insufficient to support such an inference." Ulysses I & Co. v. Peer Morton, 11 Fed. App'x 14, 16 (2d Cir. 2001).

Cases addressing whether a custom or practice exists have employed the language of both deliberate indifference and constructive acquiescence. The Second Circuit has not been clear as to whether deliberate indifference is a separate theory from constructive acquiescence or whether both describe how to prove an unofficial custom, but it is clear that the analysis substantially overlaps. See Hardy v. Town of Greenwich, No. 3:06CV833 MRK, 2008 WL 5117370, at *4 (D. Conn. Dec. 3, 2008) ("It is not entirely clear from Second Circuit case law whether 'constructive acquiescence' and 'deliberate indifference' are separate legal theories for satisfying Monell, or whether they are essentially two ways of describing the fact that a municipality had, in effect, adopted an unofficial custom or policy of unconstitutional conduct."); see also Henderson v. Town of Greenwich, No. 3:03-CV-665, 2006 WL 3791385, at *6 (D. Conn. Dec. 22, 2006) (analyzing constructive acquiescence and deliberate indifference as one theory). Under both deliberate indifference and constructive acquiescence analysis, "the

relevant inquiry is whether municipal policymakers had either actual or constructive knowledge of subordinates' unconstitutional practices and nonetheless permitted them to continue." Hardy, 2008 WL 5117370, at *4. Therefore, the court proceeds using the language of deliberate indifference[5]—as used by the parties in their memoranda—but finds that constructive acquiescence analysis would lead to the same result.

The court finds that the Amended Complaint in this case alleges facts sufficient to support the inference that the policymakers of the Town were deliberately indifferent to the retaliation against Ferrara. One way to satisfy deliberate indifference is to allege "repeated complaints of civil rights violations" and that "the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents." Vann v. City of New York, 72 F.3d 1040, 1049 (2d Cir. 1995). Ferrara pleads various instances of retaliation from fellow officers, including harassing comments about being a "rat," a threatening poster, refusal to back him up on calls, and filing of false complaints against him. See Am. Compl. at ¶¶ 39–45, 47–48, 60–63. He alleges that he filed complaints about such harassment up the chain of command, but no action was taken. See id. at ¶¶ 46, 64, 71. While the court acknowledges that these allegations are not particularly detailed, Ferrara does cite two specific instances. See id.

Additionally, all of this took place in the context of a DOJ investigation that found and alerted Mayor Maturo and other Town of East Haven policymakers to the fact that

---

[5] Deliberate indifference is most often discussed in the context of the municipality's failure to train or supervise subordinates, see, e.g., City of Canton, Ohio v. Harris, 489 U.S. 378 (1989), but the language in Amnesty America v. Town of West Hartford applies deliberate indifference more broadly to the "constitutional deprivations caused by subordinates." 361 F.3d at 125. Amnesty America discusses deliberate indifference as a means for finding that policymakers effectively ratified their subordinates' misconduct because of the policymakers' inaction. Id.

the EHPD suffered from a problem of retaliation.  See id. at ¶¶ 24–29.  The DOJ found that the EHPD "created a hostile and intimidating environment for persons who wished to cooperate with [their] investigation" and tasked the EHBPC with "expressly prohibit[ing] all forms of retaliation, whether subtle or direct, including discouragement, intimidation, coercion, or adverse action."  Id. at ¶¶ 26, 65.  The DOJ's findings included conduct similar to that experienced by Ferrara, such as notes outside offices and via the police union bulletin board about "rats" in the EHPD.  Id.  at ¶ 27.  Therefore, the policymakers acting for the Town were already aware of a problem of retaliation that went beyond Ferrara's individual case, and Ferrara alleged multiple incidents against him consistent with that existing problem.  The court finds that the failure to take action in the face of that knowledge is deliberate indifference sufficient to plausibly allege a custom or practice of retaliation.

Accordingly, Ferrara has pled sufficient facts to state a claim of municipal liability. The Motion to Dismiss Count Three is denied.

C.      Town's Liability for Negligence (Count Five)

Count Five alleges that the Town of East Haven is liable for damages under Conn. Gen. Stat. § 52-557n for harm done to Ferrara as a result of the negligence of the Town's employees and officers.  See Am. Compl. at ¶ 107.  The defendants argue that Ferrara failed to state a claim against the Town under Count Five because the Amended Complaint only pleads facts showing that the defendants acted intentionally, not negligently, and Conn. Gen. Stat. § 52-557n does not provide a cause of action for intentional conduct of a municipality's employees.  See Mem. in Supp. at 18–20.  The court agrees with the defendants, and Count Five is dismissed.

Conn. Gen. Stat. § 52-557n(a)(1) states: "[A] political subdivision of the state shall be liable for damages to person or property caused by . . . [t]he negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties . . . ."  Conn. Gen. Stat. § 52-557n(a)(1) (2017).  This statute abrogates the common law immunity of municipalities and provides plaintiffs a direct cause of action against a municipality.  See Spears v. Garcia, 263 Conn. 22, 29 (2003); Ellison v. Macci, No. HHDCV156062155S, 2016 WL 3202486, at *7 (Conn. Super. Ct. May 17, 2016) (citing Spears).  However, the statute also provides an exception that "a political subdivision of the state shall not be liable for damages to person or property caused by . . . [a]cts or omissions of any employee, officer, or agent which constitute criminal conduct, fraud, actual malice or willful misconduct."  Conn. Gen. Stat. § 52-557n(a)(2) (2017).  Connecticut law treats "willfulness" as "synonymous with intentional."  Pane v. City of Danbury, 267 Conn. 669, 685 (2004) (internal quotation marks omitted), overruled on other grounds by Grady v. Town of Somers, 294 Conn. 324 (2009).

The defendants argue that the Amended Complaint alleges actions that are intentional and therefore not covered by the statute.  See Mem. in Supp. at 18–19.  For example, the Amended Complaint alleges, "For the reasons set forth above, the injuries to the Plaintiff were the direct and proximate cause of the intentional actions of the Defendants.  Am. Compl. at ¶ 79.  As recited above, these intentional actions included leaving an offensive cartoon outside of Ferrara's locker, ordering other officers not to associate with him, threatening him with a gun to his chest, and filing false complaints

against him.[6]  See id. at ¶ 39–45, 60–63.  The defendants focus particularly on the fact

that Count Five incorporates all prior paragraphs, including Count Four, which alleges

intentional infliction of emotional distress.  See Mem. in Supp. at 19–20; see also Am.

Compl. at ¶ 102 ("The Defendants' [sic] intended to inflict emotional distress, or knew

that or should have known that emotional distress was a likely result of their conduct.").

These allegations cannot serve as the basis for liability under Conn. Gen. Stat. § 52-

557n because they include only willful misconduct not covered by the statute.

Bringing a claim for intentional tort does not itself preclude a plaintiff from also

stating sufficient facts to bring a claim in negligence, as it is possible for a defendant to

commit some acts intentionally and others negligently.  However, Ferrara does not

allege facts that would support a cause of action for negligence.  In the few places

where the Amended Complaint employs language sounding in negligence—for

example, allegations stating that the defendants should have known the consequences

or illegal nature of their actions—these statements are conclusory without support from

factual allegations, and Ferrara then goes on to argue that the actions were intentional.

See Am. Compl. at ¶ 95 ("The Plaintiff was charged with misconduct that the

Defendants know or should have known were are [sic] illegal and supplanted false

information and omitted valid information from their records and documents in order to

_____

[6] In the different context of considering qualified immunity for municipal officers, at least one court in this District has found it reasonable for a jury to consider adverse employment actions taken in retaliation for exercising First Amendment rights to be intentional acts.  See Russo v. City of Hartford, 419 F. Supp. 2d 134, 150 (D. Conn. 2006) ("The court has found that Russo presented sufficient evidence from which the jury reasonably, and without serious error, could have concluded that Croughwell undertook adverse employment actions against Russo with the motivation of retaliating against him for exercising First Amendment rights.  In light of the jury's liability finding on the section 1983 claims against Croughwell, the jury had to have found that Croughwell acted with intent to discriminate against Russo for his exercise of his First Amendment rights.").

deny Plaintiff the rights, customs, practices and fairness under Connecticut State Statutes . . . ."); see also id. at ¶ 72, 102. Accordingly, these few conclusory statements fail to state a claim for negligence against the Town.

Ferrara in his Opposition responds to the defendants' Motion to Dismiss Count Five by arguing that the defendants' actions are not subject to qualified immunity because either they are ministerial rather than discretionary or, if discretionary, they fall under the imminent harm exception. See Mem. in Opp. at 12–15. In doing so, Ferrara misunderstands the defendants' argument. The defendants' Motion to Dismiss does not depend on whether their actions are considered ministerial or discretionary. The distinction is only relevant when considering immunity for negligent acts. Rather, Conn. Gen. Stat. § 52-557n makes clear that a political subdivision is not liable for acts that constitute willful misconduct. Conn. Gen. Stat. § 52-557n(a)(2)(B) (2017). "The provision makes no distinction between ministerial and discretionary acts. When a plaintiff alleges an intentional tort that is governed by the immunity provided in § 52-557n(a)(2)(A), it is immaterial whether the acts are ministerial or discretionary." Avoletta v. City of Torrington, 133 Conn. App. 215, 225 (2012). Therefore, Ferrara's response is irrelevant here, and he has proffered no argument in his Opposition indicating that or how the Amended Complaint sufficiently alleges a cause of action in negligence.

Accordingly, Count Five is dismissed.

While the defendant Town of East Haven did not move to dismiss Count Four for IIED, the argument raised against Count Five also relates to Count Four. Specifically, Conn. Gen. Stat. § 52-557n precludes a plaintiff from bringing a claim of intentional infliction of emotional distress against a town. Miner v. Town of Cheshire, 126 F. Supp.

2d 184, 194 (D. Conn. 2000); <u>see also</u> <u>Pane</u>, 267 Conn. at 685.  Count Four of the Amended Complaint alleges IIED without specifying against which defendants.  <u>See</u> Am. Compl. at ¶ 101–05.  The court therefore construes Count Four as only proceeding against the individual defendants in their personal capacity, not against the Town of East Haven.

## VI.    CONCLUSION

For the above-stated reasons, the Motion to Amend (Doc. No. 24) is **GRANTED.** Accordingly, the court directs Ferrara to docket the Proposed Amended Complaint. When docketed, it will be the operative complaint and will be referred to as the "Amended Complaint."

The Motion to Dismiss (Doc. No. 19) is **GRANTED IN PART AND DENIED IN PART.**  Specifically, it is **GRANTED** as to Count Five and **DENIED** as to Count Three. To the extent that Counts One and Two proceed under a theory of conspiracy, the Motion to Dismiss is **GRANTED**, and Ferrara is given leave to replead if he can allege sufficient facts to state a claim of conspiracy.  To the extent that Counts One and Two proceed under a theory of direct liability under section 1983 without relying on conspiracy, the Motion to Dismiss is **DENIED**.

**SO ORDERED**.

Dated at New Haven, Connecticut this 25th day of September, 2017.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge