# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| | : | |
| VINCENT FERRARA[*] | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:17-CV-0360 (JCH) |
| | : | |
| v. | : | |
| | : | |
| JOSEPH MATURO, JR., ET AL. | : | AUGUST 26, 2019 |
| Defendants. | : | |

**RULING RE: PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (DOC. NO. 64), DEFENDANTS BRANCATI AND COPPOLA'S MOTION FOR SUMMARY JUDGMENT (DOC. NO. 71), AND REMAINING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOC. NO. 74).**

## I. INTRODUCTION

The plaintiff, Vincent Ferrara, brings eight claims against the defendants Mayor Joseph Maturo, Chiefs of Police Edward Lennon and Brent Larrabee, Deputy Chief of Police James Naccarato, Police Sergeants Craig Michalowski and Kevin Klarman, Police Officer Robert Brockett, the Town of East Haven ("the Town"), and the East Haven Board of Police Commissioners ("EHBPC"), (collectively the "Maturo Defendants"), and against Director of Administration and Management Sal Brancati and Assistant Director of Administration and Management Joseph Coppola (collectively the "Brancati Defendants"). Ferrara alleges that the Maturo Defendants retaliated against

---

[*] The court is aware, based on local newspaper reporting, that the named plaintiff, Vincent Ferrara, has passed away. See Ken Dixon, Cop Who Blew the Whistle on East Haven Police Dies, The Middletown Press, May 13, 2019, https://www.middletownpress.com/middletown/article/Cop-who-blew-the-whistle-on-East-Haven-police-dies-13841649.php. To date, neither party has filed a Notice of Suggestion of Death, nor has Ferrara's counsel moved for a substitution of party pursuant to Federal Rule of Civil Procedure 25. Counsel should note that Rule 25 provides that, "[i]f the motion [to substitute] is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed." Fed. R. Civ. P. 25.

him for cooperating with the Department of Justice ("DOJ") in its investigation of the East Haven Police Department ("EHPD"), and committed torts under Connecticut common law.  <u>See</u> Amended Complaint ("Am. Compl.") (Doc. No. 55) ¶ 1.  Ferrara also alleges that both the Maturo Defendants and the Brancati Defendants violated the Family Medical Leave Act ("FMLA").  <u>Id.</u>

The defendants seek summary judgment in their favor as to all counts except for Count Four, which alleges intentional infliction of emotional distress.  Ferrara seeks summary judgment in his favor as to Counts Three, Seven, and Eight.  For the reasons stated below, the Maturo Defendants' Motion for Summary Judgment (Doc. No. 74) is granted in part and denied in part, the Brancati Defendants' Motion for Summary Judgment (Doc. No. 71) is granted, and Ferrara's Motion for Summary Judgment (Doc. No. 64) is denied.

## II.    FACTS[1]

Ferrara was employed as a police officer by the East Haven Police Department ("EHPD") beginning in 2007.  Maturo Defendants' Local Rule 56(a)(2) Statement of Facts in Opposition to Summary Judgment ("Maturo SOF") (Doc. No. 88) ¶ 1.  In late 2010, the Federal Bureau of Investigation ("FBI") began a criminal investigation into claims that the EHPD had engaged in biased policing, unconstitutional searches and seizures, and the use of excessive force.  <u>Id.</u> ¶¶ 2–3.  Ferrara assisted and cooperated

---

[1] The facts are taken from the Maturo Defendants' Local Rule 56a(2) Statement of Facts in Opposition to Ferrara's Motion for Summary Judgment (Doc. No. 88), from Ferrara's Local Rule 56(a)2 Statement in Opposition to the Maturo Defendants' Motion for Summary Judgment (Doc. No. 90-1), and from Ferrara's Local Rule 56(a)2 Statement of Facts in Opposition to the Brancati Defendants' Motion for Summary Judgment (Doc. No. 93-1).  Unless otherwise noted, all facts are admitted or undisputed.  To the extent any disputes of fact are relevant to the various cross-motions for summary judgment, the court addresses such facts in the section of this Ruling dealing with each party's Motion and resolves such disputes in favor of the nonmoving party.

in the investigation.  Id. ¶ 3.  Ferrara met with the FBI on more than eight occasions and was registered as a "Confidential Human Source."  Id. ¶ 14.  At the conclusion of the investigation, on December 19, 2011, the Department of Justice ("DOJ") issued a letter to Mayor Maturo.  Id. ¶ 15.  The letter noted DOJ's "grave concerns" that EHPD leadership was "creating a hostile and intimidating environment" for those seeking to assist the investigation.  Id.  The letter also noted a finding that "EHPD officers and staff who cooperated" with the investigation were "subjected to retaliation and intimidation." Id. ¶ 16.

Ferrara turned over posters regarding "snitches" and "rats" to the FBI, and at least one other officer cooperating with the investigation testified to the fact that someone placed a dead rat in an empty dumpster at his home.  Id. ¶¶ 27, 29.  Ferrara stated that he was identified as an informant by a Town Attorney, and that Lennon was aware of his identity as an informant.  Id. ¶¶ 40–42.  The defendants deny this fact.  Id.[2] In January 2015, Ferrara complained that he was not being "backed up" on calls, and that Brockett was telling people that Ferrara was a "rat."  Id. ¶ 62.

Ferrara testified before a grand jury in February 2011 in relation to the DOJ investigation.  Id. ¶ 25.  After the filing of a Complaint by the United States against the EHPD in November 2012, the United States and the Town of East Haven entered into an agreement, a month later, to a conditional dismissal and Order imposing requirements on the EHPD to improve policing.  See id. ¶¶ 57–59.  The Order, inter alia, barred all forms of retaliation based on cooperation in an investigation.  Id. ¶ 59.

---

[2] While this fact is disputed, it is not material.  As noted below, the court finds that many of the earlier actions alleged are outside of the relevant statute of limitations.  See infra, § IV(B)(1)(a).

Following a final report, federal monitoring of the EHPD ceased on December 13, 2017. See id. ¶¶ 65–66, 71–72.

Lennon authorized an audit of Ferrara's emails in November 2017. Id. ¶ 74. The audit developed into an internal investigation after Brockett discovered emails containing nude or partially nude photos of several women. See id. ¶¶ 74–75. Lennon suspended Ferrara with pay on December 15, 2017. Id. ¶ 81.

On April 30, 2018, Ferrara applied for FMLA status, based on a diagnosis of glioblastoma, a form of brain cancer. Id. ¶¶ 85–86. Ferrara's work status was changed from paid suspension to FMLA status. Id. ¶ 87. Ferrara claims that this was done without notice to him and that he never "sought" FMLA leave, which the defendants deny. Id. ¶¶ 87–88, 96.[3] As of September 1, 2018, Ferrara ran out of accrued paid time off, has not been paid, and has had to pay for his contribution to medical insurance. Id. ¶ 103.

## III.    STANDARD OF REVIEW

Summary judgment is proper only where, construing the evidence in the light most favorable to the non-movant, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On a motion for summary judgment, the moving party bears the burden of establishing the absence of any genuine issue of material fact. Zalaski v. City of Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010). If the moving party satisfies that burden, the nonmoving party must set forth specific facts demonstrating that there is 'a genuine

---

[3] While this fact is disputed, it is not material. As noted below, the court finds that whether Ferrara received personal notice, and whether he believed he was seeking FMLA leave immediately is not material to determination of the pending motions. See infra, §§ IV(B)(6), IV(C)(2).

issue for trial. <u>Wright v. Goord</u>, 554 F.3d 255, 266 (2d Cir. 2009). A genuine issue exists where the evidence is such that a reasonable jury could decide in the non-moving party's favor. <u>See, e.g.</u>, <u>Rojas v. Roman Catholic Diocese of Rochester</u>, 660 F.3d 98, 104 (2d Cir. 2011) (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986)).

The court's role at summary judgment "is to determine whether genuine issues of material fact exist for trial, not to make findings of fact." <u>O'Hara v. Nat. Union Fire Ins. Co. of Pittsburgh</u>, 642 F.3d 110, 116 (2d Cir. 2011). Unsupported allegations do not create a material issue of fact and cannot overcome a properly supported motion for summary judgment. <u>See</u> <u>Weinstock v. Columbia Univ.</u>, 224 F.3d 33, 41 (2d Cir. 2000). The non-moving party "may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that [their] version of the events is not wholly fanciful." <u>D'Amico v. City of N.Y.</u>, 132 F.3d 145, 149 (2d Cir.1998) (collecting cases). Additionally, the evidence the court considers in ruling on a motion for summary judgment must be admissible evidence, or evidence that could be readily reduced to an admissible form at trial. <u>See</u> <u>LaSalle Bank National Ass'n v. Nomura Asset Capital Corp.</u>, 424 F.3d 195, 205 (2d Cir. 2005); <u>Santos v. Murdock</u>, 243 F.3d 681, 683 (2d Cir. 2001) ("Affidavits submitted to defeat summary judgment must be admissible themselves or must contain evidence that will be presented in an admissible form at trial.") (citation omitted).

## IV. DISCUSSION

### A. <u>Preliminary Issues</u>

At the outset, the court notes that it previously dismissed Count Five, which alleges that the defendants violated section 52-557n of the Connecticut General Statutes. <u>See</u> Ruling (Doc. No. 25). Though the court's Ruling addressed a prior

version of Ferrara's Complaint, the Second Amended Complaint contains the same claim. Ferrara makes no argument as to why the court's earlier dismissal would not apply to this identical claim; indeed, he states it is "withdrawn." Pl. Mem. 2 n.3. Because the court previously dismissed this claim, Count Five of the Second Amended Complaint is dismissed.

It is undisputed that "Counts Seven and Eight are the only counts containing any substantive allegations as to Defendants Brancati and Coppola." See Brancati Def.'s MSJ at 4 n.2; Pl.'s Reply to Brancati MSJ at 4 ("Defendants Sal Brancati and Joseph Coppola ('Brancati Defendants') have filed a separate motion for summary judgment. Counts Seven and Eight are the only counts directed against these defendants."). To the extent that any other counts in the Second Amended Complaint might be construed to raise claims against the Brancati Defendants, they are dismissed.

    B.    <u>Maturo Defendants' Motion for Summary Judgment</u>

    1.    Count One: Section 1983 First Amendment Retaliation Claim

Count One of the Second Amended Complaint alleges that the Maturo Defendants retaliated against Ferrara for his protected speech on a matter of public concern, in violation of the First Amendment. See Second Am. Compl. ¶ 78. To prevail on a claim for First Amendment retaliation, a plaintiff must prove "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn, 280 F.3d 98, 106–07 (2d Cir. 2001; see also Odermatt v. New York City Dep't of Educ., 694 F. App'x 842, 845 (2d Cir. 2017), cert. denied sub nom. Odermatt v. Way, 139 S. Ct. 1183, 203 L. Ed.

2d 201 (2019).  The "causal connection must be sufficient to warrant the inference that

the protected speech was a substantial motivating factor in the adverse employment

action."  Blum v. Schlegel, 18 F.3d 1005, 1010 (2d. Cir. 1994).  When a speaker is a

public employee, he must also prove that his speech was "on matters of public interest

. . . and made as member of the public, rather than as an employee."  Id. (internal

quotations and citations omitted).[4]  If a plaintiff proves these elements, a defendant "has

the opportunity to demonstrate by a preponderance of the evidence that it would have

undertaken the same adverse employment action even 'in the absence of the protected

conduct.'"  Id. (quoting Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274,

287 (1977).

The Maturo Defendants argue that summary judgment in their favor is warranted

because Ferrara failed to establish a causal connection between his protected speech

and any adverse actions against him.  See Maturo Defs.' MSJ at 5.  The Maturo

Defendants also argue that any retaliatory actions alleged to have taken place more

than three years before the filing of Ferrara's original Complaint are time-barred.  See

id. at 6.  The court first addresses the Maturo Defendants' statute of limitations

argument.

a.   Statute of Limitations

Ferrara acknowledges that "[t]he statute of limitations applicable to § 1983 claims

is 'borrowed' from that 'for the analogous claim under the law of the state where the

cause of action accrued, which in Connecticut is three years.'"  Ferrara Opp. Maturo

---

[4] The defendants have not raised this as an issue in their summary judgment motion, and thus the court
will not address this aspect of the claim.

MSJ (Doc. No. 90) at 17 (quoting Thompson v. Rovella, 734 F. App'x 787, 788-89 (2d Cir. 2018)). He argues, however, that the continuing violation doctrine tolled the statute of limitations in this case. See id. at 18.

A section 1983 claim generally accrues when a plaintiff knows or has reason to know of the harm. Shomo v. City of New York, 579 F.3d 176, 181 (2d Cir. 2009). The continuing violation doctrine is a limited exception to that rule. Id. As the Second Circuit recently held, in a case involving a police officer raising First Amendment retaliation claims, the continuing violation doctrine does not apply to "discrete unlawful acts, even where those discrete acts are part of a 'serial violation,' but [rather applies] to claims that by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment." Hadid v. City of New York, 730 F. App'x 68, 72 (2d Cir. 2018) (quoting Gonzalez v. Hasty, 802 F.3d 212, 220 (2d Cir. 2015)). And in Birch v. City of New York, 675 F. App'x 43, 44 (2d Cir. 2017), the Second Circuit similarly concluded that the continuing violation doctrine did not apply to toll a police officer's First Amendment retaliation claims where the Complaint was based "primarily on a series of discrete alleged retaliatory events such as punitive transfers, undesirable assignments, and poor performance reviews." Id.

Here, Ferrara argues that, "[s]ince the practice of threats, ostracism, excessive scrutiny, retaliatory investigations and discipline have been continuous from the time plaintiff cooperated with the FBI, there is no delay between [Ferrara's] protected speech and the adverse employment actions." Ferrara Opp. Maturo MSJ at 18. Ferrara relies upon Flores v. United States, 885 F.3d 119, 122 (2d Cir. 2018), for the proposition that "all of [Ferrara's] complaints are actionable." See Ferrara Opp. Maturo MSJ at 18.

However, nothing in Flores supports application of the continuing violation doctrine in this case. First, Flores was a case involving the Federal Tort Claims Act, not a claim of First Amendment retaliation. See Flores, 885 F.3d at 120. Second, the Flores court concluded that the continuing violation doctrine did not apply to Flores' claim, because Flores "ha[d] not shown a continuous practice or policy that violated his rights." Id. at 122.

Ferrara has provided some evidence supporting a conclusion that some EHPD and Town employees engaged in discrete acts of retaliation against him and others who assisted with the DOJ investigation. See, e.g., Ferrara SOF ¶ 41 (alleging Town Attorney "pointed out" Ferrara as an FBI informant); id. ¶ 45 (disparaging comments about "cooperators" were placed on bulletin board in EHPD headquarters). Viewed in the light most favorable to Ferrara, the facts support at best an inference that unidentified members of the EHPD engaged in retaliatory conduct based on Ferrara's cooperation with the FBI. See Maturo SOF ¶¶ 44–45 (stating, without specificity, that "defendants" harassed Ferrara after learning of his cooperation). However, discrete retaliatory conduct does not form a basis for the application of the continuing violation doctrine. Hadid, 730 F. App'x at 72. Ferrara has failed to come forward with evidence that any of the named defendants were responsible for a practice or policy of retaliation or acted pursuant to such a policy or practice.

The court therefore concludes that conduct occurring more than three years before the filing of the instant Complaint—before March 1, 2014—cannot be the basis for Ferrara's retaliation claims.

b.    <u>Denial of Training and Special Assignments</u>

The defendants argue that summary judgment as to Ferrara's First Amendment retaliation claim in Count One, based upon denials of training and special assignments, should be granted as to Maturo, Naccarato, Klarman, Michalowski, and Brockett. The Maturo Defendants argue that the foregoing defendants "had no involvement" in assigning officers to training or special details and assignments. <u>Id.</u> at 8. Ferrara does not contest the Maturo Defendants' argument that summary judgment should be granted in favor of Maturo, Naccarato, Klarman, Michalowski, and Brockett as to retaliation claims based on denial of training or special assignments. <u>See</u> Ferrara Opp. Maturo MSJ at 9 (clarifying that Ferrara's "claims for denial of specialty assignments is [sic] directed against Chief[s] Larrabee and Lennon"). In the absence of any genuine issue of fact as to the involvement of the aforementioned defendants, and with no arguments by Ferrara to the contrary, summary judgment is granted as to Maturo, Naccarato, Klarman, Michalowski, and Brockett insofar as Count One is based on retaliatory denial of training or special assignments against Ferrara.

As to Larrabee and Lennon, the Maturo Defendants contest only the third element of a retaliation claim, arguing that there is no genuine issue of material fact as to whether a causal connection exists between Ferrara's protected speech and any alleged adverse employment action. <u>See</u> Maturo Defs.' MSJ at 6 ("Summary Judgment should be granted as to Count One because Plaintiff cannot establish a causal connection between any purported adverse action and his cooperation with the FBI.").

As to Larrabee, Ferrara responds, <u>inter alia</u>, that issues of fact remain as to Larrabee's motivation with regard to Ferrara's unsuccessful application to a DEA

taskforce.  See Ferrara Opp. Maturo MSJ at 8.  The court agrees.  In his deposition,

Larrabee testified that the selection for the DEA taskforce took place in conjunction with

DEA Special Agent Jay Hanson.  See Larrabee Deposition (Doc. No. 90-5) at 7:8– 18.[5]

Larrabee testified that both he and Special Agent Hanson played a role in deciding

whether candidates were qualified for the position.  See id. at 7:8–10, 7:14–19 (stating

that both Larrabee and Hanson interviewed all three candidates for DEA taskforce, and

both decided that a third candidate, Hatchel, was not qualified for the position).

Larrabee testified that, "when it came down to the final selection, Jay Hanson indicated

his choice was [Officer Jeff] Vailette and [Larrabee] concurred."  Id. at 7:20–22.

Larrabee testified that, in his opinion, Vailette "was a much better interview" than

Ferrara.  Id. at 8:8.  Larrabee also stated that Vailette would, in his opinion, "be a team

player."  Id. at 8:12–13.

A reasonable jury could infer from Larrabee's testimony that a substantial

motivating factor in Larrabee's conclusion that Ferrara was not suited for the DEA

taskforce was that he was not, or would fail to be, a "team player."  The jury could also

reasonably infer from the evidence that Larrabee's view of Ferrara—as not being a

team player—was influenced by Ferrara's participation in the federal investigation of the

EHPD.  If a jury was to so find, it could reasonably conclude that the denial of a position

on the DEA taskforce was based in substantial part on Ferrara's protected conduct of

assisting the investigation of the EHPD.  The court cannot conclude that no reasonable

juror could find that a causal connection existed between Ferrara's protected activity

---

[5] In referencing depositions, the court cites to the page number created by the court's electronic filing system.

and the denial of a position on the DEA taskforce. Summary Judgment as to the First Amendment retaliation claim against Larrabee based on denial of special assignments is therefore denied.[6]

Lennon seeks summary judgement on the grounds that he would have taken the actions he took in the absence of any protected conduct of Ferrara. See supra, §IV(B)(1). Lennon testified that he informed Ferrara that Ferrara was ineligible for taskforce assignments because of pending internal affairs investigations. See Lennon Deposition (Doc. No. 75-7) at 9:17–24. The Maturo Defendants argue that this evidence is a sufficient basis upon which to conclude that no genuine issue of material fact exists as to a lack of causal connection between Ferrara's protected activity and the alleged adverse employment action of denials of special assignments. See Maturo Defs.' MSJ at 9. Ferrara responds that "[t]here is no provision in any EHPD policy or procedure that precludes an officer under investigation or for finding of excessive force." Ferrara SOF ¶ 43. The Maturo Defendants did not respond to this argument, nor did they come forward with evidence that an EHPD policy or procedure exists which would preclude an officer under investigation from being assigned to special assignments. The Maturo Defendants have therefore failed to carry their burden to establish "the absence of any genuine issue of material fact." Zalaski, 613 F.3d at 340. Summary Judgment as to the First Amendment retaliation claim against Lennon is denied.

---

[6] The court notes that a review of the parties' Statements of Material Fact did not make clear the date upon which Ferrara's application to join the DEA taskforce was denied. Though it is unclear whether the denial occurred within the statute of limitations, see supra at § IV(B)(1)(a), at the least, a question of fact exists as to that issue, foreclosing summary judgment.

c.    <u>Retaliatory Investigations</u>

Ferrara alleges that he was subjected to "sham internal investigations" in retaliation for his protected speech.  <u>See</u> Am. Compl. ¶ 51.  The Maturo Defendants seek summary judgment as to this claim.  They point to evidence supporting the fact that 15 of the 22 complaints against Ferrara originated either with civilian complaints, from outside law enforcement agencies, or were mandated by the Consent Decree. <u>See</u> Maturo Defs.' MSJ at 11–12.  As to the remaining seven complaints, the Maturo Defendants argue that "only one resulted in discipline," and another resulted in a verbal counseling.  <u>Id.</u> at 12. The Maturo Defendants note—and Ferrara admits—that the Consent Decree between EHPD and the DOJ required investigations of all use of force complaints.  <u>See</u> Maturo Defs.' SOF ¶ 84.  The Maturo Defendants conclude that, "in the absence of anything beyond conclusory assertions of retaliatory motive to satisfy the causal link[,] plaintiff cannot make a <u>prima facie</u> case as to a causal connection between the investigations, discipline and his [protected] speech."  Maturo Defs.' MSJ at 20 (internal quotation marks omitted).

Ferrara makes a variety of arguments in response.  He argues that the defendants' argument that "more than half of [the] complaints came from outside the EHPD is disingenuous as it infers that these defendants played no role in soliciting, exercising or promoting minor complaints into major investigations and discipline." Ferrara Opp. Maturo MSJ at 14.  Ferrara also argues that the fact that he was exonerated in most of the violations "does not negate the excessive investigating and false findings against plaintiff."  <u>Id.</u> at 15.  Ferrara also argues that disputed issues of fact remain as to the details of the investigations, and the motivation of the various

defendants involved in initiating, investigating, and determining the outcome of said investigations.  See id. at 15–17.

While Ferrara argues that the Maturo Defendants engaged in "excessive investigating and false findings" against him, see id. at 15, he cites to no evidence to support such a claim, beyond the number of investigations themselves. Even assuming that the number of investigations was excessive,[7] Ferrara offers no evidentiary support for a conclusion that there was a causal connection between his protected speech years prior and any of the internal investigations.  Instead, Ferrara relies on conclusory refutations of the nonretaliatory bases for the investigations proffered by the Maturo Defendants, and upon speculative allegations regarding the Maturo Defendants' motivations. He may not rely on such arguments to defeat an otherwise properly supported motion for summary judgment.  Unfortunately, he fails to identify acts by each individual defendant, from which a reasonable jury could infer animus directly.  Thus, Ferrara is left with a temporal argument for causation.

Absent direct evidence of retaliatory animus by a defendant, what remains are claims of retaliation based on temporal proximity.  "The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'"  Frisenda v. Inc. Vill. Of Malverne, 775 F. Supp. 2d 486, 512 (E.D.N.Y. 2011) (citing Clark Cnty. Sch. Dist. V. Breeden, 532 U.S. 268, 273–74 (2001)).

---

[7] Defendants do concede that 22 investigations "may be viewed as excessive." Def.'s Mem. Supp. MSJ at 11.

Ferrara's claim fails to create a triable question of fact on the issue of temporal proximity. Although a dispute exists as to when Ferrara's protected speech concluded, Ferrara contends that he provided information to the FBI as late as August 28, 2013. Ferrara Opp. Maturo MSJ at 13. Even when taking the facts in the light most favorable to Ferrara, Ferrara has not present sufficient facts upon which a reasonable jury could find a casual connection between the protected speech and the alleged retaliation occurring many months (and, in some cases, years) later.

The first complaint involving Ferrara (and not arising from a civilian complaint) was filed on December 26, 2013 by a non-defendant police sergeant. ("Maturo SOF") (Doc. No. 75) ¶ 54; Ex. 11 (Doc. No. 75-11) at 1. On September 30, 2014—more than one year after the latest date Ferrara claims to have cooperated with the FBI— Naccarato filed a complaint against Ferrara. See Ex. 12 (Doc. No. 75-12) at 1. Over the next several years, EHPD officers were involved in at least 10 more investigations of Ferrara (including two required by the Consent Decree). See Local Rules 56(A)(1) Statement of Facts ("Maturo SOF") (Doc. No. 75) ¶¶ 58, 67, 68, 74, 93, 107, 115, 120, 142, 144. Of these, only three resulted in a warning or suspension. See id. ¶¶ 74, 129, 144. The earliest of these three complaints resulted in a "Written Letter of Reprimand" which Larrabee delivered on April 24, 2015, see id. at 6, one year and eight months after the protected speech concluded.

In light of the period of time that elapsed between Ferrara's protected speech and the alleged retaliation, this court concludes that no reasonable jury could find that the requisite temporal proximity exists to sustain Ferrara's retaliation claim. The period of time at issue extends far beyond the two- or three-month window that other courts in

this Circuit have found to be too great.  See, e.g., Adams v. Ellis, No. 09 CIV. 1329
PKC, 2012 WL 693568, at *16 (S.D.N.Y. Mar. 2, 2012) (collecting cases), aff'd, 536 F.
App'x 144 (2d Cir. 2013).

Ferrara contends that this period of time must be "viewed through the lens of a
federal oversight that prohibited retaliation." Plaintiff's Memorandum in Opposition to
Defendants' Motion for Summary Judgement (Doc. No. 90) at 16.  This court disagrees.
The Consent Decree expired in December 2017.  Id. at 16.  Therefore, the record does
not indicate—and Ferrara does not claim—that any of the 22 investigations at issue in
Count One occurred after the expiration of the Consent Decree.  The latest of these
investigations began on January 30, 2017 and was referred to a disciplinary hearing on
April 14, 2017.  See Maturo SOF ¶ 144.  Because every investigation occurred within
the period of federal oversight, the existence of, or more particularly, the termination of,
the Consent Decree does not create a special circumstance that would affect the
temporal analysis.  But cf. infra § IV(B)(5).

Summary judgment is therefore granted as to Ferrara's Petition Clause claims
based on internal investigations

  2.  Count Two: Section 1983 Fourteenth Amendment Claims

Ferrara alleges that the defendants' conduct violated both his right to due
process and his right to equal protection of the law, as guaranteed by the Fourteenth
Amendment to the United States Constitution.  See Second Am. Compl. ¶ 87–88.  The
Maturo Defendants argue that summary judgment should be granted in their favor as to
the due process claim but make no argument as to the equal protection claim.  See
Maturo Defs.' MSJ at 20–23; Ferrara Opp. Maturo Defs.' MSJ at 25–26.  The court

therefore addresses only the due process claim; Ferrara's equal protection claim will proceed.

To determine whether a violation of due process occurred, a court "must first identify the property interest involved. Next, [the court] must determine whether the plaintiff received constitutionally adequate process in the course of the deprivation." O'Connor v. Pierson, 426 F.3d 187, 196 (2d Cir. 2005). Government employees who may only be discharged for cause have a constitutionally protected property interest in their continued employment, for purposes of the Fourteenth Amendment. See id. (citing Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538–42 (1985); Strong v. Bd. of Educ., 902 F.2d 208, 211 (2d Cir. 1990)).

The Maturo Defendants do not contest that Ferrara had a property interest in his continued employment. Rather, they argue that, because Ferrara was only suspended with pay, no pre-deprivation hearing was required. Maturo Defs.' MSJ at 22. While he was not entitled to a pre-deprivation hearing, the defendants argue that Ferrara was afforded such hearing, where counsel represented him. Id. Finally, the Maturo Defendants argue that Ferrara received adequate post-deprivation process in the form of grievance proceedings. See id.

The sole asserted basis for Ferrara's due process claim is that he was informed, without opportunity to be heard, that he was suspended with pay pending the outcome of an internal investigation. Ferrara Opp. Maturo MSJ at 24. Aside from conclusory statements, however, Ferrara has provided no support in the law for his argument that his suspension "deprived him of a protected property or liberty interest." Id. at 25. Indeed, the law in this Circuit requires a contrary conclusion.

In O'Connor, the Second Circuit held that procedural due process protections extend to employee discipline short of termination. See O'Connor, 426 F.3d at 197. However, the court also cautioned that "no court has held that an employee on fully paid leave has been deprived of a property right merely by virtue of being relieved of his job duties." Id. at 199. Moreover, the Second Circuit recently reaffirmed the principle that "an employee who is on leave and receiving his normal salary" has not been deprived of a protected property interest. See Tooly v. Schwaller, 919 F.3d 165, 173 (2d Cir. 2019) (quoting O'Connor, 426 F.3d at 199). Because Ferrara's stated basis for his claim— suspension with pay—does not constitute deprivation of a property interest as a matter of law, summary judgment is granted in favor of the Maturo Defendants as to Ferrara's Fourteenth Amendment Due Process claim insofar as it is based on his paid suspension.

However, a question of fact remains as to the change of Ferrara's status from paid suspension to FMLA status. Once Ferrara's paid leave had been exhausted, he was effectively on an unpaid leave, and his suspension was therefore unpaid. The defendants have come forward with no evidence regarding whether Ferrara was afforded any hearing before the change from paid to unpaid status. Therefore, they have failed to meet their burden to establish that no genuine issue of fact remains as to Ferrara's due process claim. Summary Judgment is therefore denied insofar as Ferrara's due process claim is premised on the period of time, if any, after his paid leave had ended, but he still had not received a hearing.

### 3. Count Three: <u>Monell</u> Claim

In Count Three of the Amended Complaint is a claim brought against the Town of East Haven ("the Town"), under <u>Monell v. Department of Social Services</u>, 436 U.S. 658 (1978), for violating Ferrara's "First and Fourteenth Amendment rights to free speech, due process and equal application of the law." Am. Compl. ¶ 95. The Maturo Defendants seek summary judgment as to Count Three based solely on the argument that Ferrara "cannot establish any of the Section 1983 claims in Count One or Two and therefore, liability cannot attach to the municipality under <u>Monell</u>." Maturo Defs.' MSJ at 23. Ferrara argues in response that the Maturo Defendants "proffer no argument or undisputed facts that the policymakers were not 'deliberately indifferent' to the retaliation against Ferrara," and that the evidence establishes at the least an issue of material fact as to whether policymakers "were also personally involved in the retaliation." <u>See</u> Ferrara Opp. Maturo MSJ at 26.

Under section 1983, a municipality can be sued if "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." <u>Monell</u>, 436 U.S. at 690–91. To bring a successful claim against a municipality, then, a plaintiff must prove: "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." <u>Roe v. City of Waterbury</u>, 542 F.3d 31, 36 (2d Cir. 2008).

As an initial matter, summary judgment is granted in favor of the defendants as to Ferrara's <u>Monell</u> claim alleging a violation of Fourteenth Amendment due process, to the same extent as granted to the Maturo Defendants in Count Two. As noted in

reference to Count Two, Ferrara cannot claim deprivation of property based on a paid suspension.  However, the Monell claim may proceed insofar as it is based on the period of time, if any, after Ferrara's paid leave was exhausted and he was on unpaid suspension without any due process.  Summary Judgment is also denied as to the remaining bases for Ferrara's Monell claim.  The Maturo Defendants failed to make any argument as to why Ferrara's Monell claim alleging a violation of his right to equal protection under the Fourteenth Amendment fails as a matter of law.  Absent any argument, summary judgment as to that claim is denied.

Moreover, the Maturo Defendants failed to establish the lack of an issue of material fact as to whether the Maturo Defendants—including Lennon, Larrabee, and Maturo—used their positions as policymakers to enforce a policy of retaliation against those who cooperated with the DOJ investigation of the EHPD.  Indeed, there is no argument as to that claim at all, except to incorporate by reference the earlier arguments against Ferrara's section 1983 claims against individual defendants.  The Maturo Defendants' Motion for Summary Judgment as to Count Three, therefore, is denied in all respects except as to Ferrara alleged deprivation of a property interest pursuant to the Fourteenth Amendment due process clause, based on his paid suspension.

### 4.    Count Six: Retaliation Claim Under Connecticut Law

In Count Six, Ferrara raises claims under section 31-51q of the Connecticut General Statutes.  See Am. Compl. ¶¶ 111–13.  Section 31-51q provides that a plaintiff may seek damages from any employer, including a state employer, for discipline or discharge "on account of the exercise by such [plaintiff] of rights guaranteed by the first

amendment to the United States Constitution or section 3, 4 or 14 of article first of the Constitution of the state, provided such activity does not substantially or materially interfere with the employee's bona fide job performance or the working relationship between the employee and the employer." Conn. Gen. Stat.§ 31-51q.

The Maturo Defendants seek summary judgment in their favor as to Ferrara's claims under section 31-51q, "for the same reasons the Defendants have requested that Counts One and Two be dismissed." Maturo Defs.' MSJ at 23. Other than incorporation of their proceeding arguments, the Maturo Defendants simply state the legal standard for a claim brought under section 31-51q. Id. Ferrara argues that the "motion [as to Count Six] should be denied as not argued." Ferrara Opp. Maturo MSJ at 27.

Though neither of the parties briefed the issue, the court notes that liability under section 31-51q is expressly limited to "[a]ny employer." See Conn. Gen. Stat. § 31-51q. Courts in this District previously have held that "a supervisor or co-employee is not an "employer" under § 31-51q." Mercer v. Schriro, 337 F. Supp. 3d 109, 140 (D. Conn. 2018 (CSH)) (collecting cases); see also Nyenhuis v. Metro. Dist. Comm'n, 604 F. Supp. 2d 377, 385 (D. Conn. 2009) (dismissing police officer's section 31-51q claims against sergeant and fellow officer). While the court has serious doubts as to whether all the defendants are "employers" within the meaning of the statute, the parties did not brief the issue, and the court will not reach it in the absence of argument.

Absent any briefing on this issue from either party, the court cannot conclude whether or not a reasonable juror could find that any or all of the Maturo defendants were Ferrara's employer within the meaning of the statute, or that they could not be an

employer as a matter of law. The claims brought pursuant to section 31-51q of the Connecticut General Statutes will therefore proceed to the extent claims in Count One and Two continue.

     5.    Count Seven: First Amendment Petition Clause Claim

Count Seven of the Amended Complaint alleges that the defendants retaliated against Ferrara for his protected conduct of filing the present action. This claim is based on two internal investigations, "IA 17-01" and "IA 17-13," as well as the allegedly retaliatory "taking all of his sick and vacation days without notifying him." Am Compl. ¶¶ 120, 152. The Maturo Defendants seek summary judgment in their favor as to all of the claims.

The elements of Ferrara's Petition Clause claim are the same as his claim for First Amendment Retaliation based on his cooperation in the investigation into the EHPD. He must demonstrate "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." Odermatt, 694 F. App'x at 845. As to the investigations—IA 17-01 and 17-13—the Maturo Defendants argue that Ferrara cannot establish a prima facie case of retaliation based upon protected speech. See Maturo Defs.' MSJ at 24–25.

As to IA 17-01, the Maturo Defendants argue that Ferrara "cannot establish that he was investigated in IA 17-01 because he filed this lawsuit for the simple reason that the IA began before he filed this lawsuit. The lawsuit was filed on March 1, 2017 . . . and IA17-01 was commenced one-month prior on January 30, 2017." Id. at 26. As to IA 17-13, the Maturo Defendants argue, that the nine-month gap between Ferrara's

filing of this action and the commencement of the investigation is too great a time period to create a reasonable inference of causation based on temporal proximity. Id. at 26–28.

As to IA 17-01, Ferrara argues in response that, while the investigation began prior to the filing of the present action, Lennon imposed the five-day suspension resulting from that investigation only four months after the plaintiff filed the present action. Ferrara Opp. Maturo MSJ at 23. Ferrara also argues that he was disparately disciplined for the conduct alleged in IA 17-01. Id. As to IA 17-13, Ferrara argues that, "[t]aking into consideration the serious claims of constitutional misconduct, and the violation of the pending Consent Decree, a strong inference can be made that the defendants had an animus against plaintiff," and therefore the defendants' temporal proximity arguments are insufficient to support a grant of summary judgment. Id. Ferrara repeats that "[t]here is sufficient evidence of disparate treatment and retaliatory animus to establish a First Amendment Petition Clause claim." Id. at 24.

Ferrara has offered no evidentiary support for his claim that he was disparately treated in either the investigations or discipline of his conduct. He provides no comparison to any other investigations or disciplinary proceedings and cites to no basis upon which a finding of disparate treatment could rest. See id. at 23–24 (stating, without citation, that Ferrara was "disparately treated"). His conclusory allegations of disparate treatment, absent supporting evidence, are insufficient to create a material issue of fact for a trial on the issue.

Absent direct evidence of retaliatory animus by a defendant—and Ferrara came forward with none—what remains, once again, are claims of retaliation based on

temporal proximity. While the court acknowledges that courts in this Circuit have held that a duration longer than two to three months between the protected activity and the alleged adverse action is too great, see, e.g., Adams, 2012 WL 693568, at *16, the Second Circuit has made clear that it "has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action." Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cty., 252 F.3d 545, 554 (2d Cir. 2001). Given the particular circumstances at issue here, including the unique factor of expiring federal oversight shortly before the alleged retaliation, a jury could reasonably find a causal connection between Ferrara's filing of this action and the alleged retaliation against him. Summary judgement is therefore denied as to Ferrara's Petition Clause claims based on internal investigations.

Finally, as to Ferrara's claims of retaliation based on the use of his sick days, the Maturo Defendants argue that they had no role in the allocation of FMLA leave. See Maturo Defs.' MSJ at 28–29. They argue in the alternative that, even if they did have a role in Ferrara's FMLA leave, there is no liability because Ferrara applied for FMLA leave and received that leave. Id. at 29. Ferrara's response suffers from the same fatal flaw as many of his arguments: he contests the Maturo Defendants' arguments but fails to come forward with any evidence sufficient to raise a genuine issue of material fact as to whether they played any role in his FMLA leave. Instead, he argues, without citation, that the Maturo Defendants' arguments are "the ultimate run around," and states, without reference, that "there are many disputed facts that require this count to go forward to trial." Ferrara Opp. Maturo MSJ at 27–28.

Ferrara's conclusory objections are insufficient to raise a genuine issue of material fact, where the Maturo Defendants have otherwise properly supported their Motion for Summary Judgment. The Maturo Defendants' Motion for Summary Judgment is granted as to Ferrara's Petition Clause claims in Count Seven of the Amended Complaint insofar as it relates to Ferrara's use of his sick days.

6. Count Eight: Family Medical Leave Act Claim

In Count Eight of the Amended Complaint, Ferrara alleges that the defendants "fraudulently took plaintiff's pay and benefits and then terminated him in retaliation for seeking protection under the FMLA." Am. Compl. ¶ 158. The Maturo Defendants argue that summary judgment should be granted in their favor as to this claim, based on the same argument as that raised in their Motion as to Count Seven: there is no genuine issue of fact as to their involvement in Ferrara's FMLA leave. See Maturo Defs.' MSJ at 37. The court agrees. Ferrara has provided no evidence to support a conclusion that any of the Maturo Defendants was involved in administration, approval, or management of, FMLA leave. Absent evidence upon which a reasonable jury could find that the Maturo Defendants were personally involved in the alleged conduct, they cannot be held liable under the FMLA. The Maturo Defendants' Motion for Summary Judgment is granted as to Count Eight.

C. Brancati Defendants' Motion for Summary Judgment

The Brancati Defendants have moved for summary judgment in their favor as to Counts Seven and Eight. See Defendants Brancati and Coppola's Memorandum of Law in Support ("Brancati Defs.' MSJ") (Doc. No. 73). They argue that, as to the FMLA claims, they cannot be held individually liable under the FMLA because they were not

"employers" within the meaning of the statute, or alternatively that they are entitled to qualified immunity because their potential liability was not clearly established.  See id. at 16–20.  The Brancati Defendants also argue that they played "no role" in Ferrara's eventual termination, and therefore only the alleged depletion of Ferrara's sick and vacation days could arguably form a basis for a claim against them.  See id. at 20.

Individually, Coppola argues that Ferrara fails to demonstrate a prima facie case of retaliation against him, that Coppola had a non-discriminatory reason for his conduct, and that he is at least due qualified immunity.  Id. at 21.  Brancati individually seeks summary judgment because he "played no role" in the conduct alleged.  Id. at 27.

The Brancati Defendants argue that they are entitled to summary judgment as to Counts Seven and Eight because they are not "employers" under the FMLA.  Id. at 16.  Ferrara fails to make any meaningful objection to this argument, beyond assailing the Brancati Defendants' grammatical arguments.  See ("Ferrara Opp. Brancati MSJ") (Doc. No. 93) at 4–5.  However, the court may not grant summary judgment by default; rather it must examine the evidence and determine whether the moving party has met its burden.

District courts in this Circuit apply an economic-reality test "[t]o determine whether an individual qualifies as an employer so as to justify imposing individual liability under the FMLA," see, e.g., Singh v. New York State Dep't of Taxation & Fin., 911 F. Supp. 2d 223, 242 (W.D.N.Y. 2012), and the Second Circuit has adopted and applied the economic-reality test in at least one FMLA case, see Graziadio v. Culinary Inst. of Am., 817 F.3d 415, 422 (2d Cir. 2016).  "In the FMLA context, courts assessing the economic reality of an employment relationship have construed this test as asking

essentially whether the putative employer 'controlled in whole or in part plaintiff's rights under the FMLA.'" Id. at 423 (quoting Noia v. Orthopedic Assocs. of Long Island, 93 F.Supp.3d 13, 16 (E.D.N.Y. 2015)).

In Graziado, the Second Circuit concluded that a Director of Human Resources exercised sufficient control over the plaintiff's FMLA rights to be subject to liability under the FMLA. See id. at 424. In that case, the plaintiff presented evidence that the defendant (1) "played an important role in the decision to fire [the plaintiff]," and (2) "exercised control over [the plaintiff's] schedule and conditions of employment, at least with respect to her return from FMLA leave." Id. at 423.

Based on the evidence presented, Brancati may have had the potential to exercise sufficient authority to be an "employer" within the meaning of the FMLA. See Pl.'s SOF (Doc. No. 93-1 ¶ 24 (noting that "Brancati is the 'Human Resources Manager' for the Town of East Haven . . . [and therefore] is responsible for the FMLA and all personnel matters"). However, "there is no evidence in the record that [Brancati] actually exercised any of this authority in relation to [Ferrara's] FMLA rights such that he could be held personally liable for violations." Santiago v. Dep't of Transp., 50 F. Supp. 3d 136, 151 (D. Conn. 2014) (dismissing FMLA claim against supervisor absent evidence of personal involvement). Beyond Brancati's job title and responsibilities, Ferrara provides no evidence to support a conclusion that Brancati was involved in any FMLA decisions impacting Ferrara. Nor has Ferrara presented any evidence that Brancati was generally involved in such decisionmaking, such that a jury might reasonable infer his involvement in the conduct alleged in Counts Seven and Eight.

Ferrara has failed to demonstrate the existence of a genuine issue of fact as to Brancati's involvement in any retaliation against Ferrara for the exercise of his FMLA rights, or in any related retaliatory change to Ferrara's work status based on Ferrara's filing of the present lawsuit. Summary judgment is granted as to Brancati on Counts Seven and Eight.

Though Coppola was not involved in Ferrara's eventual termination, the undisputed evidence demonstrates that Coppola was involved in the processing, approval, and administration of Ferrara's FMLA leave. See, e.g., Pl.'s SOF (Doc. No. 93-1) ¶¶ 3, 11, 17, 19. Indeed, the Brancati Defendants detail Coppola's involvement in the administration of Ferrara's FMLA leave. See id. The court therefore concludes that, at the very least, a genuine issue of fact remains as to whether Coppola exercised sufficient control over Ferrara's FMLA rights to be held liable under the statute for any violation of Ferrara's FMLA rights, or for any retaliatory changes to his work status based on his filing of the present action.

Coppola argues that, even if he is, in fact, an "employer" within the meaning of the FMLA, "both claims fail for a separate and equally conclusive reason: [he] did nothing wrong." Brancati Defs.' MSJ at 21. This court agrees, and finds that no reasonable jury could conclude that Coppola's actions constituted retaliation.

The undisputed facts establish that Sean Cecchini ("Cecchini") exchanged numerous emails and other communications with Coppola regarding Ferrara and FMLA leave; Cecchini identified himself as an investigator who worked for Ferrara's attorney, James Brewer. See, e.g., Pl.'s SOF (Doc. No. 93-1) ¶¶ 5, 6, 9.[8] Ferrara's attorney also

_____

[8] Though Ferrara denies some of these facts, he does not contest that Cecchini and Coppola exchanged emails between April 27 and April 30, 2018, nor does he deny that Cecchini stated to Coppola that he

exchanged emails with Coppola, wherein attorney Brewer informed Coppola of Ferrara's cancer diagnosis, and Coppola informed attorney Brewer that he could not begin the FMLA process until he received notice from Ferrara personally. Id. ¶¶ 10–11.

On May 11, 2018, Cecchini visited Coppola in person, gave Coppola a copy of some of Ferrara's medical records, and submitted a Notice of Eligibility and a completed Certification from Ferrara's healthcare provider. Id. ¶ 13. The same day, Cecchini forwarded to Coppola an email containing a letter dated April 30, 2018 ("Letter") and signed by Ferrara, which stated, "I am suffering from a serious medical condition. I need to file FMLA forms ASAP. Attorney James Brewer is representing me along with his investigative staff." Id. ¶ 14. Coppola responded on May 14, 2018, noting receipt of the email and Letter. Id.

Coppola emailed Cecchini later the same day, informing Cecchini that Ferrara's FMLA leave was "accepted as of April 30, 2018." He further stated that Ferrara's "FMLA will continue for 12 weeks from April 30, 2018" and that Mr. Ferrara "must also utilize his vacation, personal and sick time while he is on FMLA." Id. ¶ 16.[9] An FMLA Designation Notice attached to the same email noted that the Town was requiring Ferrara to substitute or use paid leave during his FMLA leave. Id. ¶ 17.

---

was "an associate investigator for Attorney James Brewer who represents Officer Vincent Ferrara[.]" See Pl.'s SOF (Doc. No. 93-1) ¶ 5. Moreover, Ferrara repeatedly fails to cite to specific evidence to support his denial, despite the Local Rules requiring that he do so. See D. Conn. L. Civ. R. 56(a)(2)(ii). To the extent that Ferrara fails to adhere to the requirement in the Local Rules to cite to specific portions of evidence to support any claim or denial of facts, the court deems these facts admitted.

[9] While Ferrara "denies" these facts, he does so based solely on the representation that "Cecchini was not plaintiff's counsel nor did he represent plaintiff or understand the communications from Coppola or their legal ramifications." Pl.'s SOF (Doc. No. 93-1) ¶ 16. Ferrara seeks to deny inferences which might be drawn from the stated facts, but he fails to address whether the facts, as stated, are true. He does not deny that the communications between Coppola and Cecchini occurred as stated, nor does he deny the contents of any of the communications. To that extent, the facts are deemed admitted.

Ferrara argues that he was never given notice of the change of his work status from paid suspension to FMLA status, because Cecchini was not his attorney. <u>See</u> Ferrara Opp. Brancati MSJ at 9 (arguing that email stating FMLA start date of April 30, 2018 "was never cc'd to plaintiff or his counsel"); <u>id.</u> at 10 ("Cecchini is not plaintiff's representative, his counsel was and these defendants were well aware of that."). Based on this issue, Ferrara claims that there are "disputed facts that have to be determined by a jury." <u>Id.</u> at 6. This claim fails.

Given the undisputed facts involving the interactions between Coppola and Cecchini, no reasonable jury could find that Coppola's actions violated Ferrara's rights. In fact, based on the undisputed facts, it was entirely reasonable for Coppola to conclude that Cecchini was operating as an agent of Ferrara's attorney—indeed, Ferrara communicated as much in his letter. <u>See</u> Ferrara Letter, Ex. A-6 (Doc. No. 78-1) at 3. Moreover, Cecchini spoke to Coppola on multiple occasions, submitted Ferrara's medical information to Coppola, and was the point-of-contact throughout the FMLA application process. Cecchini also conveyed a letter from Ferrara seeking FMLA leave. It was entirely reasonable for Coppola to believe that Ferrara, through Cecchini and his attorney, was seeking to apply for FMLA. It was similarly reasonable that Coppola believed that informing Cecchini of an FMLA start-date was sufficient notice to Ferrara, given that Ferrara stated that Attorney Brewer and his investigators were his representative. For these reasons, the court grants summary judgment to Coppola on Counts Seven and Eight.[10]

---

[10] To the extent that the Brancati Defendants argued for qualified immunity, <u>see</u> Brancati Defs.' MSJ at 19, the court need not reach that issue.

D. <u>Plaintiff's Motion for Summary Judgment</u>

Ferrara seeks summary judgment in his favor as to Count Three, alleging a

<u>Monell</u> claim; Count Seven, alleging violation of his rights under the First Amendment

Petition Clause; and Count Eight, for violation of his rights under the FMLA. <u>See</u>

Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment ("Pl.'s

Mem. in Supp.") (Doc. No. 66) at 1–2. The court granted summary judgment in favor of

the Maturo and Brancati Defendants as to Count Seven (insofar as it relates to claims of

retaliation based on Ferrara's use of sick days) and Count Eight. Ferrara's Motion for

Summary Judgment as to those counts is therefore denied.

As to Count Three, the <u>Monell</u> claim, Ferrara seeks summary judgment based on

the argument that "Maturo, Lennon, Brancati and Coppola had final decisionmaking

authority to categorize plaintiff as on FMLA or suspended with pay," and that their

"decision to secretly change plaintiff's employment status from 'suspended with pay' to

'sick' and/or 'vacation' was intended to retaliate against him." Ferrara MSJ at 24.

To bring a successful claim against a municipality under <u>Monell</u>, a plaintiff must

prove: "(1) actions taken under color of law; (2) deprivation of a constitutional or

statutory right; (3) causation; (4) damages; and (5) that an official policy of the

municipality caused the constitutional injury." <u>Roe</u>, 542 F.3d at 36.

The Second Circuit has held, in the context of a <u>Monell</u> claim, that where a

plaintiff "proceed[s] against both the municipal actors alleged to have inflicted the tort

and the municipality that promulgated the offensive policy, the plaintiff's failure to secure

a judgment against the individual actors would, indeed, preclude a judgment against the

municipality <u>if</u> the ruling in favor of the individual defendants resulted from the plaintiff's

failure to show that they committed the alleged tort." Askins v. Doe No. 1, 727 F.3d 248, 253–54 (2d Cir. 2013).

The court previously granted summary judgment as to the FMLA claims brought against the Maturo Defendants, on the basis that Ferrara failed to come forward with evidence upon which a reasonable jury could find that the Maturo Defendants were personally involved in the alleged conduct. See supra, § IV(B)(6). Thus, those claims cannot form the basis of Monell liability. See Askins, 727 F.3d at 253 (agreeing that municipality "cannot be liable under Monell where Plaintiff cannot establish a violation of his constitutional rights").

The court has granted summary judgment for Brancati and Coppola on the FMLA claims and thus there can be no Monell claim. Id. Ferrara's Motion for Summary Judgment on his Monell claims in Count Three is denied.

## V.    CONCLUSION

For the reasons stated above, Count Five of the Second Amended Complaint is **DISMISSED**. The Maturo Defendants' Motion for Summary Judgment (Doc. No. 74) is **GRANTED IN PART** and **DENIED IN PART**. The Motion for Summary Judgment is granted as to Count One, as to the claims against Maturo, Naccarato, Klarman, Michalowski, and Brockett. It is denied as to Count One, as brought against Lennon and Larrabee. The Motion for Summary Judgment is granted as to Count Two, insofar as it raises a Due Process claim based on Ferrara's paid suspension. The Motion for Summary Judgement as to Count Two is denied insofar as Count Two's due process claim is premised on any period of time after his paid leave was exhausted or alleges an equal protection claim. The Motion is granted as to Count Three, insofar as the Monell

claim is derivative of Ferrara's Due Process claim; the Motion is denied as to Count Three in all other respects.  The Motion is denied as to Count Six, to the extent that claims in Count One and Two continue.  The Motion is granted as to Count Seven insofar as it applies Ferrara's Petition Clause Claims based on the use of Ferrara's sick days.  The motion is denied as to Count Seven insofar as it applies Ferrara's Petition Clause Claims based on internal investigations.  The Motion is granted as to Count Eight.

The Brancati Defendants Motion for Summary Judgment (Doc. No. 71) is **GRANTED**.  Summary Judgment is granted in favor of Brancati and Coppola as to Counts Seven and Eight.

Ferrara's Motion for Summary Judgment (Doc. No. 64) is **DENIED**.


**SO ORDERED**.

Dated at New Haven, Connecticut this 26th day of August 2019.

_____
Janet C. Hall
United States District Judge